The Assistant Vice-Chancellor.
The circumstance that the fund loaned to Jones and Graham by the clerk of the court in 1835, was paid into court in a suit for the partition of lands, is one of essential importance to the complainant. The defendants objected to any proof of that fact being given, because it is not alleged in the bill. The statement in the bill is, that this fund was a part of a sum of money paid into court to secure the dower of Mrs. Magdalena Hosack, in pursuance of a decree of this court made by the Vice Chancellor of the first circuit, on the 29th of October, 1833, in a suit then pending, (the title of which is set forth at large;) and that the mortgagee had no other right or interest in that money, than such as devolved upon him by virtue of his office as clerk of the court. By reference to the decree, which is a record of the court, it appears that the suit in which it was entered, was a suit for partition ; and that the fund paid into court, belonged to the respective parties therein, subject to the life interest of Mrs. Hosack in the same.
It would, no doubt, have been well for the pleader to have alleged distinctly, that the money was paid into court in a partition suit. But I am upon the whole, satisfied that the statement should be held sufficient to put the matter in issue. It is an averment in effect, that there was such a suit and decree, and that the fund came to the clerk from that source; and it is followed by the charge that the clerk had no power to deal with it as he did. The character of the suit, and the use to be made of the fund while in court, so far as they were material, being shown by the decree thus cited, are in substance made a part of the case, and with reasonable certainty brought to the notice of the defendants.
It is also objected, that the bill does not allege, and so does *63 not authorize any proof, that any one, other than the clerk in chancery, has any interest in the mortgage in question,
What I have already repeated from the bill, answers this objection. It alleges that the clerk had no right or interest in the fund loaned, except by virtue of his office, as the depositary of the same in the suit before mentioned, and the decree shows to whom it belonged. It was not essential to the complainant's case, to state who the parties in interest were, so long as by the statute, they were not to be parties to the suit. If their action in respect of the substituted security, became material to the defence, it was competent for the defendants to set it up and prove the facts; as they have actually done by their answer and testimony.
The complainant’s evidence, to the effect that the moneys loaned were paid into court, in a particular suit, being a suit for partition, is said to be proof extrinsic the bond and mortgage, and in effect varying their terms and obligation ; and that it is therefore incompetent evidence.
The cases cited, of an attempt to show by parol that a promise in writing to pay absolutely, was in fact a promise to pay out of a particular fund, and to prove that a mortgage by its terms payable unconditionally, was not to be paid unless certain stipulations by parol were performed ; are not at all analogous to the question made by the complainant. He does not seek to add to or to detract from the force of the bond and mortgage. Whether the money came from a partition, or a creditor’s suit; or to whomsoever it belonged ; the extent of the lien of a bond and mortgage to the clerk, the time and manner of payment, and the place where and the person to whom it was to be paid, must be controlled by their written terms. The obligations of this bond and mortgage were no greater, if as is alleged, the fund came from a partition suit. The only difference claimed by the complainant, is in the mode of discharging the mortgage from the record; that whereas in an ordinary instance, a simple voluntary certificate of the mortgagee is sufficient, in the case of the clerk, an order of the court was required for effecting such a discharge. This, I think, does not affect the contract into which the borrower enters on executing a bond and mortgage *64 like those in question. It goes merely to the form of the evidence which he shall receive to show that his contract is performed.
I will therefore assume that the bill is sufficient in form and allegation, to support the case which the complainant makes the basis of the relief he solicits.
The next inquiry is, has the complainant established his case by proof?
The testimony is sufficient to show that the money loaned to Jones and Graham on this mortgage in 1835, was a part of the fund paid into court in the suit stated in the bill. The receipt given by Graham, in connection with the other circumstances, shows that fact presumptively; and in the absence of any rebutting testimony on the part of the defendants, it sustains the allegation. I have no doubt that the receipt is competent evidence, both as an official act of the clerk in the line of his duty, and as a part of the res gestee between himself and the mortgagors on making the loan. The check given by the clerk, would have been equally obnoxious to the objection that it was res inter alios acta:
The facts in regard to the discharge of the first mortgage, the execution of the second for the same amount and for the same fund, the conveyance to The Farmers Loan and Trust Company, and their agreement thereupon; are not disputed. It is also proved, that there was no order of the court authorizing the discharge of the first mortgage, or the receiving of the second in its stead.
The important question in the cause, is on the effect of the discharge of the first mortgage, executed by the then clerk of the court, in April, 1837.
I do not deem it necessary to discuss the proposition of the complainant’s counsel, that the clerk in no case has the power to discharge a mortgage which he has taken as clerk, without the direction of the court itself.
The seventieth section of the statute relative to the partition of lands, directs that all investments and re-investments of the moneys brought into court under the provisions of that statute, shall be made in the public stocks of the United States, or of this *65 state, or on bond and mortgage upon unincumbered real estate, of at least double the value of such investment; “ and no such security¡ bond, mortgage, or other evidence of such investment, shall be discharged, transferred or impaired, by any act of the clerk, without the order of the court entered in the minutes thereof” (2 Rev. Stat. 328, § 70.)
This is a plain, direct and positive enactment; and there is nothing in its terms, or in the subject matter of the statute, which warrants me in emasculating' it and destroying its force, by adopting the too fashionable construction, that it is merely directory.
By proceedings in partition, the immovable estate of widows and children, (to say nothing of adults,) is disposed of irrecoverably, without their assent, and the proceeds are brought into the courts of law and equity in which the suits happen to be pending, there to be kept and invested until the disability of the owners shall cease, or on some other contingency the court shall order the fund to be paid out. It is not only proper, but essentially just, that both the legislature and the courts, should adopt and vigilantly enforce, all prudent and reasonable safeguards for the safe keeping and preservation of property, thus as it were, violently converted from a fixed and indestructible character, to one in which it is liable to so many accidents and losses.
It is clear that the clerk in this instance acted without authority, and the statute declares that such act, shall not discharge or impair the mortgage.
The discharge was nevertheless entered upon the record, and the mortgage was thereby apparently satisfied and its lien effaced.
Were the defendants, who thereupon advanced their trust certificates, protected by the discharge thus executed and recorded?
It is contended on their behalf, that there was an actual payment and satisfaction of the mortgage by Jones and Graham, and that the court will now make the proper order for entering satisfaction of record. The complainant’s counsel conceded that the clerk, of necessity, was clothed with power to receive pay *66 ment of these securities, but denied that there had been any actual payment of the mortgage.
As to the fact of payment, I agree fully with the complainant. The forms and the language used, are nothing to the purpose ; and even more circuitous and imposing forms, could not have changed the character of the transaction. It was in substance, the substitution of other property as security for the debt, in the place of that mortgaged; and to effect that object, the original mortgage was cancelled, and a new one executed in its stead on the substituted property.
The transaction was conducted fairly and in good faith, beyond all doubt; and no party to it, I presume, imagined it possible that the substituted security would ever prove inadequate. But its legal effect and character cannot be influenced by these considerations. It was not a payment of the original mortgage.
The Farmers Loan and Trust Company insist, that if the discharge were unauthorized and made without actual payment, they are nevertheless protected by it, because they are bona fide purchasers without notice of any of the equities now set up to defeat its operation. The mortgage itself gave them no information that the money secured to be paid, was a fund in the mortgagee’s hands as clerk, much less that it had been paid into court in a partition suit; and they advanced the consideration for the lands in question, on the faith of the discharge of the mortgage. And further, that the discharge, being executed by the proper party in due form, was rightfully recorded, and purchasers relying upon such record are protected by the recording acts. This defence involves several propositions, which 1 will proceed to consider.
1. As to the notice which the defendants had by the mortgage itself.
It may not be very material, but in fact these parties had notice not merely from the record. They had actual notice of the existence of the mortgage, and that it was unpaid. By their arrangement with Jones and Graham, they were to furnish the means for its actual payment. The mortgage by its terms gave Biotice to all the world, that the money secured,, was a fund held *67 by the mortgagee as clerk of the court of chancery. It describes the mortgagee by his name of office, and although it does not express that it is made to him as clerk in chancery, it expresses the same thing by his official name and by its limitation of the estate, as well as the payment of the money, to his successors, instead of his personal representatives.
Thus the defendants were in point of law informed, that the mortgage belonged to the clerk of the court of chancery, by virtue of his office. They had no actual notice of the nature, origin, or ownership of the fund ; but they are chargeable with knowledge of the law ; and thereby they had notice, that among the various sources from which the clerk might receive moneys for investment, suits in partition was a prominent one, and that by the statute regulating those suits, a mortgage given for money thus derived, could not be discharged without an order of the court entered in its minutes.
The defendants therefore, knew that this mortgage was an investment held by the clerk of the court; and that the clerk by law was made the holder of some investments, which he could not discharge, suo motu. and which could only be lawfully discharged by the court.
Then when the clerk’s certificate, discharging this mortgage, was presented to them, (or, which is not different, the register’s certificate that a satisfaction piece, entitling the mortgage to be satisfied of record, was filed with him,) had the defendants a right to assume that the clerk’s discharge was sufficient; or were they bound, before acting upon it, to ascertain, either that the 'mortgage did not fall within that class of investments which the court alone could discharge, or that there had been an actual satisfaction by the payment of the money to the clerk 1
I am persuaded that it was their duty to have ascertained these things, and that they were put upon inquiry as to the true character of this investment, and are affected by it as if they had had actual notice. Knowing (in legal contemplation,) that the clerk was by law the depositary of two or more classes of investments, as to one of which he could not give a discharge ; the defendants were not authorized to assume, that an investment respecting which they were dealing, did not belong to the *68 latter class ; and if they have dealt with it on that assumption, and it turn out to be erroneous, they are affected with notice of the true character of the instrument, precisely as if they had pursued the inquiry which their knowledge of those classes pointed out to them, and had actually learned to which it belonged.
The general doctrine of constructive notice, as held in courts of equity, is so familiar that I need not repeat it. Its application depends upon circumstances which are seldom alike in any two cases.
I will illustrate my idea of the notice to these defendants, by supposing the case of a will, by which a variety of stocks are bequeathed to the executor in trust for the testator’s son and daughter, a specific part for each ; and the will provides, that the stocks set apart for his daughter shall not be sold or transferred, except by order of the court of chancery. A broker purchases of the trustee, a portion of the stocks set apart for the daughter, and pays its full value, without being aware that it is a portion of those stocks, although he is acquainted with the fact, that the trustee holds two kinds of stocks, one of which he cannot sell without the order of some court. There is no doubt that such a purchaser might be compelled by the daughter to restore the stock bought under such circumstances.
When a party is informed that some one of many investments held by a trustee, is inalienable, he deals at his peril, if he choose to deal with such trustee for any one of the investments, without first ascertaining that it is not the one which the trustee cannot transfer.
The defendants must be deemed to have had notice of the fact, that the fund loaned on the mortgage in question, was paid into court in a partition suit, and that the order of the court was indispensable for its discharge.
This being so, it needs no argument to show that the defendants could not rely upon the deputy register’s certificate, that there was lodged with him a satisfaction piece entitling the mortgage to be cancelled of record. The deputy might or might not know the law respecting partition investments; and his opinion of the' validity of a satisfaction piece not yet recorded. *69 was a poor substitute for a certified copy of an order of the court directing a discharge to be executed.
The statute regulating the entry of mortgage discharges, on which the defendants also rely, must be read in connection with the provision in the partition act, which was enacted at the same time. In that connection, it provides that a recorded mortgage, given to the clerk of a court for money paid to him in a partition suit, shall be discharged on the record, upon a certificate signed by the mortgagee or his successors, pursuant to the order of the court, and duly acknowledged or proved.
The defendants under the circumstances of this case, are not protected by the recording of the discharge and the entry of satisfaction on the record of the mortgage; and the complainant, the successor of the mortgagee, has a right, in behalf of those interested in the fund, to foreclose the mortgage, unless the subsequent events ought to preclude him from enforcing it.
It is claimed by the defendants, that the complainant, by proceeding to foreclose the substituted mortgage, and applying the proceeds of the sale of the lands thereby mortgaged, has, with a full knowledge of the facts, ratified and confirmed the acts of his predecessor in discharging the first mortgage and substituting the second. And that the parties interested in the fund, participated in such ratification and affirmance. That if the complainant, on ascertaining the facts, had disregarded the second mortgage, and proceeded to foreclose the first, making The Farmers Loan and Trust Company parties to the suit; then, on his claim being sustained, and a sale of the lots in the first mortgage decreed, it would have been made a part of the decree that he should assign the second mortgage to those defendants. But by pursuing the course they did, designing to obtain both mortgages as security for the loan, in violation of the intentions and understanding of the mortgagors and mortgagee, the complainant and the owners of the fund, have precluded the defendants from obtaining any of the property covered by the second mortgage ; and it would be contrary to all equity and justice now to permit them to sell the lands included in the first mortgage.
First, as to the ratification of the acts of the former clerk.
The second mortgage, when the owners of the fund became *70 entitled to receive it, was a valid lien upon the lands conveyed by it, and one which Jones and Graham could not contest, even if such owners had then asserted that they could enforce the first mortgage also ; because Jones and Graham were personally liable for the debt, and could not say to the mortgagee, “ yon must first resort to the original security and sell the lands which we have conveyed to others, on the faith of that security being discharged.”
If the complainant at that time, had filed a bill to foreclose the original mortgage, The Farmers Loan and Trust Company would have interposed, and with great force have contended, that he should first proceed on the second mortgage, so as to exonerate, if possible, the lands which they had purchased in good faith of Jones and Graham. Equity would have sustained this ground, and required the complainant to exhaust his remedy on the substituted mortgage, in the first instance. The complainant, then, has done precisely what equity would have compelled him to do, for the protection of The Farmers Loan and Trust Company ; and his conduct cannot be deemed an election to affirm the discharge of the first security. It is only an election to affirm as to the mortgagors, for the benefit of those defendants, the pledge of further security for the debt.
To my mind, it presents the case of a creditor having two mortgages, each on a different farm, for the same debt, and the mortgagor having sold one of the farms and received the price, the mortgagee, in order to collect his debt, begins by foreclosing his mortgage on the farm which the debtor still owns.
It was undoubtedly competent for the complainant to have stated this whole case, including both mortgages, in one bill, and asked for a decree to sell first the property which was last mortgaged. But such a course would have been injudicious, unless it was very certain that the lots in the second mortgage would not pay the debt; because that mortgage, by itself, could be enforced without litigation, and it might reasonably be expected that the attempt to enforce the first mortgage would be strenuously resisted.
Second. I am at a loss to perceive what difference the course pursued, made to the prejudice of the defendants. Perhaps they *71 assume that delay would have been occasioned by the attempted foreclosure of the first mortgage ; and during the interval, real estate would have advanced in price, so that the loss to them would have been much less than it is now likely to be. 1 do not think I can properly found my judgment on such an hypothesis. I must set out with the position that the first mortgage was valid, and the complainant in due course, would have obtained a decree of sale under it, as he in fact did, under the substituted mortgage. In that event, he would have sold in the fall of 1842, the 88 lots embraced in the original mortgage, (or as many of them as would have paid the debt,) instead of selling the lots mortgaged in 1837. Now what difference could it make to these defendants, whether the one tract or the other, was sold on the 31st October, 1842 ? The complainant had a right to sell one or the other, and no matter which was sold, any rise in the value of the other would enure to the defendants benefit.
The effect of the testimony as to the relative values, in the fall of 1842, of the property included in the two mortgages is, that the lots in the first mortgage were then more depressed than those in the second mortgage, in comparison with the value of both in 1845 ; and that if the 88 lots had been sold on a foreclosure, in the fall of 1842, or even in the fall of 1843, they would not have brought enough to pay the mortgage debt, nor any more than was realised from the sale under the second mortgage. So that if there has been any difference occasioned by the course actually pursued, it has been in favor of the defendants.
These grounds of defence to the suit are not sustained. And what I have said, disposes of the defendant’s claim, to have $75,000 paid to them first, out of the proceeds of the sale ; or to be first paid the present value of the lots which were included in the second mortgage. They have no priority for the former, and they have received the benefit of the latter, in the sale made on the 31st of October, 1842.
The complainant is entitled to a decree of sale. The interest on the first mortgage is to be computed at six per cent, and the proceeds of the sale under the second mortgage, after deducting *72 the costs of the foreclosure, are to be applied at the date when, they were received, to the extinguishment of the principal and interest then due.
The complain&nts are entitled to their costs of suit out of the fund.
As the mortgaged premises are worth far more than the debt and costs, and they are laid out in lots, the defendants may direct what portion of the premises shall be first sold by the master, (a)

 This decree was affirmed by the supreme court in equity, in November, 1847, before Hurlbut, M'Coun, and Mason, Justices. The defendants appealed to the court of appeals, where the decree was reversed by five judges against two, in December, 1848, on the sole ground, that by foreclosing the mortgage given to the clerk, in April, 1837, the parties entitled to the fund, had ratified what had been done by the clerk in discharging the original mortgage.
The judgment of the Assistant Vice-Chancellor, on all the points mentioned in the syllabus at the beginning of the case, was upheld by the court of appeals ; as appears by the following extract from the leading opinion there delivered :
“ Bronson, J.—We are, I believe, all agreed, that the clerk had no authority, without an order of the court of chancery, to take a new mortgage as a substitute for the first, and discharge the first; and that the persons interested in that mortgage, had the right to treat it as a valid and subsisting security, notwithstanding the satisfaction which had been entered of record. And this right might be exercised, not only against the mortgagors, but against the loan and trust company, although the company had advanced its funds on the faith of the supposed satisfaction.”